**E-FILED**
Wednesday, 19 December, 2007 10:53:08 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

|  |  |  |
|---|---|---|
| DEAN STONE,<br>MICHAEL KRAYCINOVICH, and,<br>TRACY JONES, | ) <br> ) <br> ) | |
|  | ) | |
|    Plaintiffs, | ) | |
|  | ) | |
|         v. | ) | No.  07-1198 |
|  | ) | |
| JOHN T. PEPMEYER, individually and<br>in his official capacity as State's<br>Attorney of Knox County, Illinois,<br>KNOX COUNTY, Illinois, and<br>the STATE OF ILLINOIS, | ) <br> ) <br> ) <br> ) <br> ) | |
|  | ) | |
|    Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiffs, former Knox County Assistant State's Attorneys, pursue federal and state claims arising from alleged retaliation for opposing sexual harassment and other alleged misconduct by Defendant Pepmeyer, the State's Attorney for Knox County.[1]  Before the Court are motions to dismiss by Defendants brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

---

[1]This case has been consolidated with Griffith v. Pepmeyer, 07-1130, for purposes of discovery.  (7/30/07 text order).

(d/e's 12, 13, 16).  For the reasons below, the Court recommends that the motions be granted in part and denied in part.

## Standard

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), or challenges to the court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. Patel v. City of Chicago, 383 F.3d 569, 572 (7th Cir. 2004).

To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted).  However, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' . . . ." Id., *quoting* Bell Atlantic, 127 S.Ct. at 1965, 1973 n. 14. "Although this does

'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" Killingsworth v. HSBC Bank Nevada, 507 F.3d 614, 618 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1974.

### Allegations

Plaintiffs were assistant state's attorneys for Knox County until March 21, 2007, when Defendant fired them.  Plaintiffs claim that they were fired in retaliation for opposing Defendant's alleged sexual harassment and discrimination of other employees of the Knox County State's Attorney's Office.[2] Plaintiff Jones also alleges that she was one of the targets of Defendant's sexual harassment and discrimination.

Plaintiffs also allege that they were fired in retaliation for opposing Defendant's possible "bias and a conflict of interest and possible official misconduct regarding his handling of prosecution files . . . ."  (Complaint, ¶¶ 35, 43, 51, 59, 67, 75).  Plaintiffs allege that their actions opposing that misconduct included speaking to the Illinois State Police and requesting appointment of a special prosecutor.

---

[2]Those employees have their own case pending in this district, Griffith v. Pepmeyer, 07-CV-1130, which is consolidated with this case for discovery purposes.

Plaintiffs' Complaint sets forth the following claims:

Title VII retaliation against Plaintiffs' employer (Counts I-III)

Title VII sexual discrimination claim by Plaintiff Jones against Plaintiffs' employer (Count IV)

First Amendment retaliation against Pepmeyer in his individual and official capacities (Counts V-VII)

State claim of wrongful discharge against Pepmeyer individually and against his employer (Counts VIII-X)

State claim for intentional infliction of emotional distress against Pepmeyer individually and against his employer (Counts XI-XIII)

State claim for libel/slander against Pepmeyer individually (Counts XIV-XVI)

**Analysis**

## I.  Title VII (Counts I-IV)

Plaintiffs allege in Counts I-III that they were discharged and otherwise discriminated against in retaliation for their opposition to Pepmeyer's alleged sexual discrimination of co-employees.  In Count IV, Plaintiff Jones also pursues a Title VII claim of sexual harassment and a hostile work environment.

Defendants argue that the Title VII claims must be dismissed because Plaintiffs are not "employees" within the meaning of Title VII.

Title VII defines an employee as:

an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. . . .

42 U.S.C. § 2000e(f).[3]

The same factors that determine whether a public employee may be fired for political reasons also determine whether that person is an "employee" covered under Title VII.  *See* Americanos v. Carter, 74 F.3d 138, 144 (7th Cir. 1996)(test for determining employee under Title VII is the same as the Supreme Court's *Elrod/Branti* test for politically motivated firings)(Indiana deputy attorney general was not employee under Title VII). In other words, if an individual can be fired based on political affiliation, then that individual is not an "employee" under Title VII.  Id.

In Livas v. Petka, 711 F.2d 798 (7th Cir. 1983), the Seventh Circuit upheld a district court's factual finding that an Illinois assistant state's attorney had not been fired for political reasons.  Livas is relevant in this case because the Livas Court also observed that the assistant state's

---

[3]The exemption does not include "employees subject to the civil service laws of a State government," but Plaintiffs do not assert they are covered under civil service laws.

attorney had no Constitutional claim even if he *had* been fired for political reasons.  711 F.2d at 800.  The Court explained that the rule against politically-motivated terminations of public employees ". . . admits of an exception . . . in the case of public employees who occupy policy-making or confidential positions."  Id., *citing* Elrod v. Burns, 427 U.S. 347, 367-72 (1976).  "[T]he pivotal inquiry is not whether a position is confidential or policy-making in character, but rather 'whether the hiring authority can demonstrate that [political considerations are] an appropriate requirement for the effective performance of the public office involved.'"  Id.*, quoting* Branti v. Finkel, 445 U.S. 507, 518 (1980)(bracketed material in Livas).

The Seventh Circuit in Livas examined the job responsibilities of an assistant state's attorney in Illinois and concluded that the job included policy-making powers.  711 F.2d at 801 ("Indeed, an Assistant State's Attorney may, in carrying out his or her duties, make some decisions that will actually create policy.").  The Court also observed that the State's Attorney "exercised broad public responsibilities" and had "broad discretion to set whatever policies he or she believes necessary to protect the interests of that society."  711 F.2d at 800.  Thus, the State's Attorney "was

entitled to demand absolute loyalty from his assistants . . ."  711 F.2d at 801.

The Seventh Circuit in <u>Americanos v. Carter</u>, 74 F.3d 138 (7th Cir. 1996) reached the same conclusion for an Indiana deputy attorney general. The Seventh Circuit reiterated that the focus was on the "'powers inherent in a given office' rather than the actual functions of the occupant of that office performed.'"  <u>Americanos</u>, 74 F.3d at 141, *quoting* <u>Heck v. City of Freeport</u>, 985 F.2d 305, 309 (7th Cir. 1993).  <u>Americanos</u> observed that deputy attorney generals were statutorily endowed with the same powers as the attorney general, that the deputy attorney general represented the office of the attorney general and acted on behalf of the State, and that the attorney general had statutory authority to "hire and fire without cause."  <u>Id</u>. at 141-42.  <u>Americanos</u> also noted that, like the State's Attorney in <u>Livas</u>, an Attorney General was "'entitled to demand absolute loyalty from his assistants . . .'"  <u>Id.</u> at 143, *quoting* <u>Livas</u>, 711 F.3d at 801.  Thus, the Court held that the deputy attorney general could be fired for political reasons, and, consequently, was not an "employee" for Title VII purposes. <u>Americanos</u>, 74 F.3d at 144.

The Court believes that <u>Americanos</u> and <u>Livas</u> lead inescapably to the conclusion that Plaintiffs are not "employees" under Title VII.[4]  *See* <u>Guy v. State of Illinois</u>, 958 F.Supp. 1300, 1305-06 (N.D. Ill. 1997)(as matter of first impression, assistant state's attorneys were appointed policy makers excluded from Title VII).  <u>Livas</u>' statements about assistant state's attorneys cannot be brushed aside as dicta, particularly given <u>Americanos</u>'s embrace of those statements.  Additionally, even without <u>Livas</u>, the "inherent [statutory] powers" of an assistant state's attorney dictate the same result.  *See* <u>McGrath v. Gillis</u>, 44 F.3d 567, 571 (7th Cir. 1995)("Under Illinois law Assistant State's Attorneys are surrogates for the State's Attorney.");55 ILCS 5/3-9005 (setting forth powers and duties of State's attorney).

Plaintiffs cite <u>Office of the Lake County State's Attorney v. Human Rights Commission</u>, 235 Ill.App.3d 1036 (2d Dist. 1992), to support their argument that they are Title VII employees, or, at least that the question is unsettled enough to survive dismissal.  The Illinois Appellate Court in <u>Lake County</u> held that an assistant state's attorney was a covered "employee" under § 2-101(A) of the Illinois Human Rights Act, which exempts elected

---

[4]Plaintiffs might be covered under 42 U.S.C. Section 2000e-16(c)("Coverage of previously exempt State employees")(the "Government Employee Rights Act"), but that question is not before the Court.

officials and their "immediate personal staffs."  Lake County's legal analysis
of Title VII's history and statutory language is thorough and thoughtful, but
the decision does not conclude that assistant state's attorneys are intended
"employees" under Title VII.  Rather, the Lake County Court recognized
that Title VII's language was only "loosely analogous" to the Illinois Human
Rights Act,  235 Ill.App.3d at 1043.  The Court justified its conclusion that
assistant state's attorneys were covered under the Illinois Human Rights
Act in part on the differences in statutory language between Title VII and
the Illinois Human Rights Act.  235 Ill.App.3d at 1048.  Additionally, the
Seventh Circuit case of Americanos did not exist and therefore was not
discussed in the Lake County opinion.

More importantly, the Lake County Court was writing on a blank slate.
This Court is not.  The Illinois Appellate Court in Lake County specifically
stated that, though it had considered federal case law, federal case law
was not binding on its construction of a State statute.  235 Ill.App.3d 1036.
In contrast, this Court *is* bound by Seventh Circuit case law, and the slate
is not blank, in light of Americanos and Livas.

The Court accordingly recommends dismissal of Plaintiffs' Title VII
claims because Plaintiffs are excluded from Title VII's definition of

employee under 42 U.S.C. 2000e(f).  The Court need not address Defendants' other arguments for dismissal of the Title VII claims.

## II.  First Amendment (Counts V-VII)

Plaintiffs allege in Counts V-VII that they "became aware that John T. Pepmeyer had engaged in conduct that may have constituted bias and a conflict of interest and possible official misconduct regarding his handling of prosecution files in the State's Attorney . . . .  Said conduct involved matters of public concern."  (Complaint ¶¶ 35, 43, 51).  Plaintiffs Stone and Kraycinovich allege they "undertook actions in the exercise of [their] 1st Amendment rights in opposition to John T. Pepmeyer's conduct regarding his handling of files . . . including speaking to the Illinois State Police and requesting the appointment of a special prosecutor."  (Complaint ¶¶36, 44).  Plaintiff Jones alleges that her actions in opposition included speaking to the Illinois State Police.  (Complaint ¶ 52).  Plaintiffs allege generally that Pepmeyer fired them in retaliation for the exercise of their First Amendment rights to express themselves on matters of public concern.  (Complaint ¶¶37, 45, 53).

### A.  <u>Garcetti</u>

Pepmeyer, individually, and Knox County assert that Plaintiffs state no First Amendment claim because their speech was not Constitutionally

protected as a matter of law under the Supreme Court decision of <u>Garcetti</u>

<u>v. Ceballos</u>, 126 S.Ct. 1951 (2006).  <u>Garcetti</u> held that:

> . . . two inquiries . . .guide interpretation of the constitutional
> protections accorded to public employee speech.  The first
> requires determining whether the employee spoke as a citizen
> on a matter of public concern. . . [citation omitted].  If the
> answer is no, the employee has no First Amendment cause of
> action based on his or her employer's reaction to the speech. . .
> . [citation omitted].  If the answer is yes, then the possibility of a
> First Amendment claims arises.  The question becomes
> whether the relevant government entity had an adequate
> justification for treating the employee differently from any other
> member of the general public.

126 S.Ct. at 1958.  Thus, "before analyzing whether an employee's speech

is of public concern, a court must determine whether the employee was

speaking 'as a citizen' or, by contrast, pursuant to his duties as a public

employee."  <u>Sigsworth v. City of Aurora</u>, 487 F.3d 506, 509-10 (7th Cir.

2007), *quoting* <u>Garcetti</u>, 126 S.Ct. at 1960.  Whether the speech was

"related to the speaker's job" is not necessarily dispositive.  <u>Garcetti</u>, 126

S.Ct. at 1959.  The inquiry is "practical, . . . and should focus on 'the duties

an employee is actually expected to perform.'"  <u>Morales v. Jones</u>, 494 F.3d

590, 596 (7th Cir. 2007), *quoting* <u>Garcetti</u>, 126 S.Ct. at 1962.

Pepmeyer, individually, and Knox County contend that Plaintiffs' state

no First Amendment cause of action because their speech was made

pursuant to their official duties as assistant state's attorneys, particularly their request for a special prosecutor.  (d/e 14, p, 8).

The Court believes it is premature to determine whether part or all of Plaintiffs' speech was constitutionally protected.  This important question deserves a thoroughly developed record showing the exact speech at issue and the context in which that speech was made.  Garcetti underscores that the analysis is context and fact specific, not rote.  See Morales v. Jones, 494 F.3d 590, 598 (7th Cir. 2007)(same speech that was not protected when made pursuant to official duties was protected when made in a deposition).[5]

The First Amendment claims are not based only on Plaintiffs' concerns about the mishandling of cases.  Plaintiffs argue in their response that they "also bring their First Amendment claims based on their verbal support of three other employees of the State's Attorney's office."  (d/e 19, p. 12).  They also assert that "speech about sexual harassment and gender discrimination are inherently subjects of public concern."  (d/e 19, p.11); see Kokkinis v. Ivkovich, 185 F.3d 840, 844 (7th Cir. 1999)("The issue of sex discrimination in public employment is, of course, a matter of public

_____

[5]The Seventh Circuit "recognized the oddity of a constitutional ruling in which speech said to one individual may be protected under the First Amendment, while precisely the same speech said to another individual is not protected."  494 F.3d at 598.

concern."); Marshall v. Allen, 984 F.2d 787, 795-96 (7th Cir. 1993)(sex discrimination in government office is topic of public concern-qualified immunity denied).

Even if the First Amendment claims were based solely on the mishandling of cases, the Court does not believe the question can be confidently answered at this stage.  Plaintiffs' ethical responsibilities as assistant state's attorneys may have required them to report Pepmeyer's alleged misconduct, but they could still have First Amendment rights as citizens to reveal their concerns.  *See* Morales v. Jones, 494 F.3d at 598.

Defendants argue that the Court may at least rule on Plaintiffs' request for a special prosecutor.  Knox County submits for consideration the initial motion for appointment of special prosecutor filed by Plaintiffs Stone and Kraycinovich as assistant state's attorneys on behalf of the People of Illinois.  (d/e 15, Ex. C).  The Court agrees with Plaintiffs that even this determination better awaits summary judgment, which will enable that request to be placed in context with other speech on the same subject, if any, and in context of the entire state proceeding, rather than one pleading in that proceeding.  For example, Plaintiffs attach a copy of an amended motion filed in that same case, filed by them as "citizens and

residents of Knox County, Illinois."[6]  (d/e 19, Ex. 1); *see also* <u>Baxter v.</u>
<u>Peterlin</u>, 156 Ill.App.3d 564 (3d Dist. 1987)(state's attorney, court or citizen
may move for appointment of special prosecutor under 55 ILCS 5/3-9008);
<u>People ex rel. Baughman V. Eaton</u>, 24 Ill.App.3d 833 (4th Dist.
1974)(private citizen may file petition for appointment of special
prosecutor).

       In sum, the Court believes a decision on <u>Garcetti</u>'s reach awaits a
thoroughly developed factual record.  *See, e.g.,* <u>Garcetti</u>, 126 S.Ct. 1951
(decided on summary judgment); <u>Moralez</u>, 494 F.3d 590 (decided after jury
trial); <u>Mills v. City of Evansville, Ind.</u>, 452 F.3d 646, 648 (7th Cir.
2006)(summary judgment); <u>Dillon v. Fermon</u>, 2006 WL 2457516 (C.D. Ill.
2006)(based on review of evidence presented at trial); <u>Logan v. Indiana</u>
<u>Dept. of Corrections</u>, 2006 WL 1750583 (S.D. Ind. 2006)(summary
judgment); <u>Taylor v. Hall</u>, 2006 WL 1793603 (N.D. Ind. 2006)(summary
judgment); <u>Davis v. Harris</u>, 2006 WL 3321630 (C.D. Ill. 2006)(summary
judgment).  The cases cited by Defendants supporting a 12(b)(6) dismissal
involved speech to supervisors in situations that clearly paralleled  <u>Garcetti</u>.
*See, e.g.,* <u>Sigsworth v. City of Aurora</u>, 487 F.3d 506 (7th Cir. 2007)(officer's

---

       [6]It appears that petition was filed March 22, 2007, one day *after* Plaintiffs were
terminated.  Thus, it is hard to understand how the termination could have been in
retaliation for the citizen petition.  However, Plaintiffs allege later retaliatory acts, such
as criminal investigations, that arguably could be attributed to the citizen petition.

complaints to supervisors of misconduct by task force members); <u>Young v. County of Cook</u>, 2007 WL 1704287 (N.D. Ill. 2007)(plaintiff alleged he was acting in official capacity pursuant to job duties in reporting misconduct).

### B. Qualified Immunity

The state of the current record also leads the Court to the conclusion that a determination of qualified immunity would be premature.  Pepmeyer asserts that it was not clearly established on March 21, 2007 (the date Plaintiffs were terminated) that Plaintiffs' speech was constitutionally protected.

"When confronted with a claim of qualified immunity, a court must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" <u>Brosseau v. Haugen</u>, 125 S.Ct. 596, 598 (2004), *quoting* <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Plaintiffs are not required to plead facts to defeat qualified immunity, and under notice pleading standards often there are not enough facts alleged to make qualified immunity determinations:

> In addressing the district court's denial of defendants' motion to dismiss based on qualified immunity, we note that a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. *See* <u>Jacobs v. City of Chicago</u>, 215 F.3d 758, 765 n. 3 (7th Cir.2000). Because an immunity defense

usually depends on the facts of the case, dismissal at the
pleading stage is inappropriate: "[T]he plaintiff is not required
initially to plead factual allegations that anticipate and
overcome a defense of qualified immunity." <u>Id.</u> As noted in
<u>Jacobs</u>' concurrence, "Rule 12(b)(6) is a mismatch for immunity
and almost always a bad ground for dismissal .... and when
defendants do assert immunity it is essential to consider facts
in addition to those in the complaint." <u>Id.</u> at 775 (Easterbrook,
J., concurring).

<u>Alvarado v. Litscher</u>, 267 F.3d 648, 651 (7th Cir. 2001); *see also* <u>Jacobs v.
City of Chicago</u>, 215 F.3d 758, 765 n.3 (7th Cir. 2000)("notice pleading
requirements of Rule 8 do not require that a plaintiff anticipate the assertion
of qualified immunity by the defendant and plead allegations that will defeat
that immunity.").

Accordingly, the Court recommends that a conclusive decision on
qualified immunity await a further developed factual record.  *See* <u>Fairley v.
Fermaint</u>, 482 F.3d 897, 901-02 (7th Cir. 2007)(rule that interlocutory appeal
clock starts to run when the district court conclusively denies a motion on
qualified immunity "relieves public officials from any pressure to take what
may be premature appeals from orders declining to dismiss complaints.").

### C.  Sovereign Immunity

Plaintiffs concede that the Eleventh Amendment bars their § 1983
official capacity claims to the extent they are made against the State of
Illinois.  (d/e 19, p. 10).  The Eleventh Amendment bars Plaintiffs from

recovering money damages against a State.  Hadi v. Horn, 830 F.2d 779, 783 (7th Cir. 1987).

The Eleventh Amendment does not bar injunctive relief against State officials, but Plaintiffs do not dispute the State's assertion that their request for injunctive relief is conjectural.[7]  Sierakowski v. Ryan, 223 F.3d 440, 443 (7th Cir. 2000)("a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury").  Accordingly, the Court recommends dismissal of the State of Illinois and Pepmeyer in his official capacity from the Section 1983 claims.[8]     **D. Knox County**

Knox County counters that it cannot be held directly liable under 42 U.S.C. § 1983 for Pepmeyer's alleged constitutional violations, because Pepmeyer is not a policy maker for the County.  (d/e 15, p. 11).

Plaintiffs counter that "[i]f Knox County is determined to be a joint employer of Pepmeyer, it would be an additional defendant under the 'official capacity' claim and a direct defendant."  (d/e 19, p. 10).  Plaintiffs contend that the official capacity claims (except for those against the State

---

[7]Plaintiffs seek an "injunction prohibiting the State's Attorney from taking adverse action against [them] regarding [their] employment records, criminal investigations and [their] efforts to obtain other employment."  (Complaint pp. 10).

[8]The Court made the same recommendation in the consolidated case.  Griffith v. Pepmeyer, 07-1130, 10/2/07 Report and Recommendation, d/e 24.

of Illinois) "should proceed until the issue of joint employment and municipal liability are factually resolved."  Id.

Section 1983 liability may attach to the County if Plaintiffs' constitutional deprivations were caused by: 1) an express County policy; 2) a widespread County practice existed "so permanent and well-settled as to constitute a custom or usage within the force of law"; or 3) a person with "final policy-making authority" for the County.  *See* Billings v. Madison Metropolitan School Dist., 259 F.3d 807, 817 (7th Cir. 2001), *citing* McCormick v. City of Chicago, 230 F.3d 319, 324 (7th Cir. 2000).

The Court agrees with Knox County that it is difficult to discern a basis for direct Section 1983 liability against the County based on Pepmeyer's alleged misconduct, particularly since Pepmeyer is considered an elected State official and arguably had exclusive control over Plaintiffs' terminations and work conditions.  However, Plaintiffs assert in their response that discovery may uncover a basis for direct liability against Knox County: "The [C]ounty Board's involvement in the termination process, post-termination harassing investigations and the withholding of salaries and benefits after termination are all factual matters that rise to the level of retaliatory action . . ."  (d/e 19, p. 13).  Further, though the County's assertion that it is not Pepmeyer's employer has legal support, the County

might arguably be considered a joint employer of Pepmeyer.  *See*
Robinson v. Sappington, 351 F.3d 317, 338 and n.9 (7th Cir. 2003); *see*
*also* this Court's Report and Recommendation in consolidated case, Griffith
v. Pepmeyer, 07-1104, pp. 5-6.   If so, the County does not address how
that impacts the Monell analysis under Section 1983, if at all.

## III.  State Law Claims (Counts VIII-XVI)

### A.     Sovereign Immunity and Illinois Court of Claims

Defendants assert that the State's sovereign immunity bars all the
state claims.  They argue that the Illinois Court of Claims retains exclusive
jurisdiction over Plaintiffs' state claims.

Illinois has retained the sovereign immunity afforded it under the
Eleventh Amendment, except for cases proceeding in the Illinois Court of
Claims.  Jinkins v. Lee, 807 N.E.2d 411, 417-418 (2004).  The Illinois Court
of Claims has exclusive jurisdiction over claims against the State "for
damages in cases sounding for tort. . . " 705 ILCS 505/8(d).

It is not entirely clear to the Court whether the Illinois Court of Claims
exercises jurisdiction over tort claims against state's attorneys. The Court's
own research revealed some Illinois Court of Claims decisions that hold,
despite contrary rulings by Illinois appellate courts, that the Court of Claims
lacks jurisdiction over such claims in part because of the County's

responsibility to pay damages.  *See* <u>Washington v. State of Illinois</u>, 54

Ill.Ct.Cl. 317 (2001)(State not liable for civil liabilities against State's

Attorney's Office); <u>Sherry v. State of Illinois</u>, 55 Ill.Ct. Cl. 437 ("tort claims

against the State's Attorneys . . . are ordinarily not claims against the State

or claims for which the state is liable, . . . and thus should be actionable in

circuit court."); *cf.* <u>White v. City of Chicago</u>, 369 Ill.App.3d 765, 778-79 (1st

Dist. 2006)(Court of Claims has exclusive jurisdiction over tort claims

against State's Attorney, including claim for intentional infliction of

emotional distress); <u>Price v. State of Illinois</u>, 354 Ill.App.3d 90 (1st Dist.

2004)(claim against state's attorney for willful and wanton misconduct

belonged in Court of Claims); <u>Sneed v. Howell</u>, 306 Ill.App.3d 1149

(1999)(Court of Claims has exclusive jurisdiction over claims against

State's Attorney); <u>Hampton v. City of Chicago</u>, 349 F.Supp.2d 1075 (N.D.

Ill.2004)(Ill. Ct. Claims had exclusive jurisdiction over claims against state's

attorney where no allegations that attorney acted maliciously or beyond

scope of authority).

 Yet the jurisdictional reach of the Illinois Court of Claims need not be

determined here because it is not dispositive of Eleventh Amendment

sovereign immunity.  The only question for this Court is whether Plaintiffs'

state claims are barred by the sovereign immunity provided in the Eleventh

Amendment.  If they are, then they must be dismissed from federal court regardless of whether Plaintiffs can pursue their claims against the State's Attorney in the Illinois Court of Claims.

The Court does agree with Defendants' sovereign immunity argument insofar as it relates to the state claims against Pepmeyer in his official capacity.  Controlling precedent clearly holds that Pepmeyer is a state official, not a county official.  Ingemunson v. Hedges, 133 Ill.2d 364, 369-70, 549 N.E.2d 1269, 1270-71 (1990); Hernandez v. Joliet Police Dep't, 197 F.3d 256, 265 (7th Cir. 1999)(suit against Illinois county state's attorney office is suit against the state); Garcia v. City of Chicago, 24 F.3d 966, 969 (7th Cir. 1994)("the Illinois Supreme Court decided in 1990 that state's attorneys are state officials"–money damages not recoverable against State's Attorney in official capacity)(11th Amendment)(citing Ingemunson); see also Patterson v. Burge, 328 F.Supp.2d 878, 899 (N.D. Ill. 2004)("the Eleventh Amendment prohibits private litigants from suing the state or its agencies, such as the State's Attorney's Office, for damages."); see also Office of Lake County State's Attorney v. Human Rights, 235 Ill.App.3d 1036, 1042 (2d Dist. 1992)(The Office of the State's Attorney is the "legal equivalent of the State itself.").

As to the state claims against Pepmeyer in his individual capacity, the Court agrees with Pepmeyer that he, in his individual capacity, is not an appropriate defendant in the retaliatory discharge claim.  The Illinois Supreme Court held in Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill.2d 12, 22 (1998) that a plaintiff may not pursue a retaliatory discharge claim against the employee or agent of his former employer who effected the discharge on behalf of the employer: "Logically speaking, only 'the employer' has the power to hire or fire an employee."  Buckner, 182 Ill.2d at 20.  It is not Pepmeyer in his individual capacity who has the power to discharge assistant state's attorneys.  Plaintiffs' "employer" has that power–either the Office of the State's Attorney (which is entitled to sovereign immunity) and/or Knox County (which is not entitled to state sovereign immunity).[9]

In contrast to the retaliatory discharge claim, the Court does not believe dismissal of the state claims for intentional infliction of emotion

---

[9]Knox County argues that it is not Plaintiffs' employer and therefore cannot be liable on the retaliatory discharge claim.  In the Court's opinion that is a question of fact that cannot be resolved at this point, given the alleged factual disputes about Knox County's role in Plaintiffs' termination process.  *See* 55 ILCS 4/2003 (County Board establishes and pays for assistant state's attorneys positions); *see also* this Court's Report and Recommendation in consolidated case, Griffith v. Pepmeyer, 07-1104, pp. 6-7.

distress or libel/slander should be dismissed at this stage against

Pepmeyer in his individual capacity on sovereign immunity grounds.

"Eleventh Amendment sovereign immunity does not shield individual

defendants . . . from federal court jurisdiction over state law tort claims."

Magdziak v. Byrd, 96 F.3d 1045, 1048 (7th Cir. 1996).  The Illinois Supreme

Court has stated that a case is against the State and "only nominally

against the employee" when:

> "there are (1) no allegations an agent or employee of the State
> acted beyond the scope of his authority through wrongful acts;
> (2) the duty alleged to have been breached was not owed to
> the public generally independent of the fact of state
> employment; and (3) where the complained-of actions involve
> matters ordinarily within the employee's normal and official
> functions of the State . . ."

Healy v. Vaupel, 133 Ill.2d 295 (1990)(citing appellate court); *see also*

Jinkins v. Lee, 209 Ill.2d 320 (2004)(action is against state and must be

brought in Court of Claims where employee was acting within scope of

authority and performing normal functions of job, and duty breached not

owed to general public, *citing* Currie v. Lao, 148 Ill.2d 151, 159 (1992)).

"Regarding the relief sought, a court must also consider whether the relief

sought is such that 'a judgment for the plaintiff could operate to control the

actions of the State or subject it to liability.'" Jinkins, 209 Il.2d at 330

*quoting* Currie v. Lao, 148 Ill.2d at 159.

Plaintiffs allege that Pepmeyer "initiated criminal investigations against [them] in an effort to wrongly discredit [them] and bring unfounded charges against [them]." (Complaint paras. 88, 100, 112). Plaintiffs also allege that Pepmeyer "engaged in other intentional, extreme and abusive behavior against" them. (Complaint paras. 89, 101, 113). They allege that Pepmeyer "intentionally, willfully and maliciously presented to the public, both orally and in writing, words that accused [them] of . . . criminal conduct, imputed an inability to perform [their] employment . . ., suggested a want of integrity . . . ." (Complaint paras. 124, 132, 140).

In light of these factual allegations, the Court cannot confidently conclude at the pleading stage that the state claims against Pepmeyer individually for intentional infliction of emotional distress and libel/slander are effectively claims against the State of Illinois. "Sovereign immunity affords no protection, . . . when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances an action may be brought in circuit court." Healy, 133 Ill.2d at 307; *see also* Patterson v. Burge, 328 F.Supp.2d 878 (N.D. Ill. 2004)(Court of Claims does not have exclusive jurisdiction where defendant acted in excess of authority or violation of constitutional or statutory law), *citing* Healy, 133 Ill.2d 295. Furthermore, Pepmeyer does

not explain how a judgment against him in his individual capacity would operate to control the actions of the State of Illinois or subject it to liability, given that Knox County may apparently be responsible for paying a judgment against Pepmeyer.

### B. Absolute Immunity

Pepmeyer, individually, and Knox County argue that absolute immunity protects them against the state claims, citing Morton v. , 145 Ill.App. 3d 417, 422 (1st Dist. 1986) in support.  In Morton, a former special assistant attorney general sued the Illinois Attorney General, Deputy Attorney General, First Assistant Attorney General, and Chief of the Welfare Litigation Division for retaliatory discharge, defamation, and invasion of privacy.  The Court in Morton held that all the alleged wrongs were actions taken within the scope of the defendants' official duties and thus the defendants were protected by absolute immunity.

Defendants' argument may ultimately prevail, but the Court believes the determination of whether absolute immunity applies is premature, just as the determination of whether the claims against Pepmeyer individually are in effect claims against the State.  Morton is analogous on some points but also demonstrates how fact-specific the determination is.  A fully developed factual record will provide stronger footing for a ruling on

whether Pepmeyer acted within the scope of his official duties.  *See*

Hanania v. Lorene-Maltese, 56 F.Supp.2d 1010 (N.D. Ill. 1999)(whether

absolute immunity barred defamation claim depended on whether reports

were within scope of official's duties, a determination not appropriate at

motion to dismiss stage).

### C.  Intentional Infliction of Emotional Distress

Pepmeyer, individually, and Knox County also contend that Plaintiffs

fail to state a claim for the intentional infliction of emotional distress

because Pepmeyer's termination of them is not the kind of extreme and

outrageous conduct required to support that claim.  However, Plaintiffs also

allege other conduct (the investigations), and allege generally that

Pepmeyer engaged in "other intentional, abusive and extreme" misconduct.

Federal courts cannot impose fact pleading requirements, even for state

claims taken under supplemental jurisdiction.  Christensen v. County of

Boone, 483 F.3d 454, 465 (7th Cir. 2007)(reversing district court's dismissal

of intentional infliction of emotional distress claim).  "Rule 8 does not

require plaintiffs to plead the 'elements' of legal theories, or facts

corresponding to each element."  Id.  Defendants' arguments are better

made at the summary judgment stage on a developed factual record.

The Court does agree with Defendants that punitive damages are not available on the intentional infliction of emotional distress claim, which Plaintiffs do not dispute.  *See* Knierim v. Izzo, 22 Ill.2d 73, 88, 174 N.E.2d 157, 165 (1961)**.**

WHEREFORE, the Court RECOMMENDS that Defendants' Motions to Dismiss be granted in part and denied in part.  The Court recommends dismissal of Plaintiffs' Title VII claims (Counts I-IV) on the grounds that Plaintiffs' are not covered "employees" under Title VII.  The Court further recommends that the State of Illinois and Pepmeyer in his official capacity be dismissed as defendants because the claims against them are barred by sovereign immunity.  The Court also recommends that Pepmeyer, in his individual capacity, be dismissed from the retaliatory discharge claims (Counts VIII-X).  The Court further recommends that the claim for punitive damages on the claims for intentional infliction of emotional distress be dismissed.  The Court otherwise recommends that the motions to dismiss be denied.

If this Recommendation is accepted, the remaining claims will be:

First Amendment Retaliation claims against Pepmeyer individually and Knox County (Counts V-VII);

State Claims for Wrongful/Retaliatory Discharge against Knox County (Counts VIII-X)

State Claims for Intentional Infliction of Emotional Distress against Pepmeyer individually and Knox County (Counts XI-XIII);

State Claim for Libel and Slander against Pepmeyer individually and Knox County (Counts XIV-XVI)

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:    December 19, 2007

s/ Byron G. Cudmore

_____

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE