UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DEAN STONE, MICHAEL KRAYCINOVICH, and TRACY JONES, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JOHN T. PEPMEYER, Individually and in his official capacity as State's Attorney of Knox County, Illinois, KNOX COUNTY, Illinois, and the STATE OF ILLINOIS, )<br>)<br>Defendants. ) | Case No. 07-1198 |

## O R D E R

On February 19, 2008, a Report & Recommendation was filed by Magistrate Judge Byron G. Cudmore in the above-captioned case recommending that Defendants' Motions to Dismiss be granted in part and denied in part. Both Plaintiffs and Defendants filed objections to the Report & Recommendation, and this Order follows.

### BACKGROUND

The relevant facts were sufficiently set forth in the comprehensive Report & Recommendation of the Magistrate Judge and need not be restated here. Suffice it to say that this action arises out circumstances surrounding Defendant Pepmeyer's alleged conduct after becoming the Knox County State's Attorney. Plaintiffs claim that they were discharged from their positions as assistant state's attorneys in retaliation for opposing sexual harassment and discrimination by Pepmeyer and in retaliation for speech protected under the First Amendment, as well as various state law claims. Plaintiff Tracy Jones also alleges that Pepmeyer discriminated against her on the basis of her gender.

The Magistrate Judge recommended the following: (1) the Title VII claims alleged in Counts I - IV should be dismissed as Plaintiffs are not covered "employees" under Title VII; (2) the claims against the State of Illinois and Pepmeyer in his official capacity should be dismissed as barred by sovereign immunity; (3) the retaliatory discharge claims against Pepmeyer in his individual capacity in Counts VIII - X should be dismissed; and (4) the request for punitive damages on the claim for intentional infliction of emotional distress should be dismissed.  Plaintiffs filed an objection challenging the recommendation with respect to the dismissal of Counts I - IV.  Defendants object to the recommended denial of the Motions to Dismiss with respect to the First Amendment claims, retaliatory discharge claims, claims for intentional infliction of emotional distress, and claim for libel and slander. This Order follows.

## STANDARD OF REVIEW

A district court reviews *de novo* any portion of a magistrate judge's report and recommendation to which written objections have been made.  See Fed. R. Civ. P. 72(b). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions."  Id.

## ANALYSIS

The Magistrate Judge recommends the dismissal of Plaintiffs' Title VII claims based on the conclusion that Plaintiffs are not "employees" within the meaning of Title VII.  Plaintiffs object to this recommendation, citing Office of Lake County State's Attorney v. Human Rights Commission, 245 Ill.App.3d 1036 (2nd Dist. 1992).  Plaintiffs assert that in order to determine their employment status, courts must look to Illinois

law, which has found assistant state's attorneys to be "employees" under the Illinois Human Rights Act, which is not the statute at issue in this case.

In their objection, Plaintiffs note the Seventh Circuit's decisions in Livas v. Petka, 711 F.2d 798 (7th Cir. 1983) and Americanos v. Carter, 74 F.3d 138, 144 (7th Cir. 1996), which were relied on by the Magistrate Judge in making his recommendation. Plaintiffs then cite Butler v. New York State Dept. of Law, 211 F.3d 739 (2nd Cir. 2000), for its criticism of the Seventh Circuit's rationale in Livas and suggest that Americanos can be disregarded because it failed to specifically consider Lake County. However, this Court is not in the Second Circuit or a part of the Illinois state courts, and this is a hierarchical system. The Court is not at liberty to ignore established law in the Seventh Circuit because another circuit or a state appellate court reached a different result.

In Livas, an assistant state's attorney alleged that he was wrongfully discharged for not having supported the state's attorney's bid for re-election. 711 F.2d at 798. The Seventh Circuit applied the doctrines set forth in Branti v. Finkel, 445 U.S. 507, 519 (1980) and Elrod v. Burns, 427 U.S. 347, 367-72 (1976), and held that political considerations could be an appropriate requirement for effective performance of a public prosecutor's duties and that assistant state's attorneys make some decisions that will actually create policy in the course of carrying out their duties. Id., at 800-01.

> The public interest in the efficient administration of justice requires that decisions made by such assistant prosecutors conform with the broad objectives chosen by the prosecutor. For this reason, Petka was entitled to demand absolute loyalty from his assistants, including Livas. That Petka lost confidence in Livas, for whatever reason, is therefore sufficient justification for Livas' dismissal.

Id., at 801.  This holding was reaffirmed in Hernandez v. O'Malley, 98 F.3d 293, 295-96 (7th Cir. 1996), where the Seventh Circuit acknowledged that assistant state's attorneys are "in a large office . . . the effective policy-makers for broad classes of matters."

In Americanos, the plaintiff was a deputy attorney general in Indiana.  74 F.3d at 139.  Following the election of a new attorney general, Americanos was asked to resign and submitted his resignation under protest.  Id.  Americanos then filed suit alleging that he was dismissed in violation of Title VII and 42 U.S.C. § 1983.  After noting that courts must look to the powers inherent in a given office rather than the actual functions the occupant of that office performs, the Seventh Circuit referenced the decision in Livas, again noting that deputy attorney generals are analogous to assistant state's attorneys, as they have the direct ability to implement the policies and goals of the attorney general and state's attorney respectively.  Id., at 143.  The Court of Appeals then noted that "the test for determining if someone is an 'employee' within the definition of [Title VII and the ADEA] 'is essentially indistinguishable from that applied in the political firing context under the *Elrod/Branti* doctrine'" and that "'the reasons for exempting the office from the patronage ban apply with equal force to the requirements of the ADEA [and Title VII].'"  Id., at 144, *citing* Heck v. City of Freeport, 985 F.2d 305, 310 (7th Cir. 1993).  Thus, a deputy attorney general was found not to be an "employee" within the purview of Title VII, and Americanos' Title VII claim was dismissed.

When read in conjunction with Livas, Heck, and Hernandez, Americanos makes clear that there is no principled basis for distinction between a deputy attorney general and an assistant state's attorney for purposes of determining whether either is an "employee" under Title VII under the established and binding law of this circuit.  *See*

Guy v. State of Illinois, 958 F.Supp. 1300, 1305-06 (N.D.Ill. 1997) (finding that under Livas, Americanos, and Heck, it is clear that the duties of assistant state's attorneys are a matter of common knowledge based on state statutory and relevant case law and render them "appointees on a policy-making level" under the exception to Title VII's definition of "employee" as set forth in 42 U.S.C. § 2000e(f)). Accordingly, Plaintiffs' argument to the contrary must be rejected. The Court therefore agrees with the recommendation of the Magistrate Judge that Plaintiffs' Title VII claims as set forth in Counts I - IV of the Complaint must be dismissed.

The Magistrate Judge recommended that a ruling on the viability of the First Amendment claims set forth in Counts V-VII be reserved until presented on a more fully developed factual record. Defendants object to this recommendation, arguing that a decision on this issue can be made upon Plaintiffs' Complaint. Specifically, Defendants argue that as assistant state's attorneys, Plaintiffs duties are proscribed by law, and there can be no dispute that the context of the speech alleged necessarily implicates the legally proscribed job duties of an assistant state's attorney.

In considering whether Plaintiffs' conduct as public employees was protected speech under the First Amendment, courts have traditionally applied the two-part test of Connick and Pickering. The first inquiry is whether the employee "spoke as a citizen on a matter of public concern." Connick v. Myers, 461 U.S. 138, 148 (1983). "If not, the employee has no cause of action for First Amendment retaliation and there is no need to reach the second part of the test. . . ." Spiegla v. Hull, 481 F.3d 961, 965 (7th Cir. 2007). If the employee spoke as a citizen on a matter of public concern, then the second inquiry requires balancing the employee's interest as a citizen in making the

comment versus the public employer's interest in promoting effective and efficient public service.  Id., *citing* Pickering v. Board of Education, 391 U.S. 563, 568 (1968).

Although courts have traditionally considered the content, form, and context of the speech to determine whether the employee passed the first inquiry, the Supreme Court has recently clarified that the threshold inquiry is limited to whether the employee was speaking as a citizen.  Spiegla, 481 F.3d at 965; Mills v. City of Evansville, 452 F.3d 646, 647-48 (7th Cir. 2006).  It is only if the employee was speaking as a citizen that courts may look into the content of the speech.  Id.

In Garcetti v. Ceballos, ___ U.S. ___, 126 S.Ct. 1951, 1960 (2006), the Supreme Court held that "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for first amendment purposes, and the constitution does not insulate their communications from employer discipline."  In other words, if a public employee's statements were made pursuant to his or her official duties, he or she was not acting as a citizen regardless of the content of the speech.  Spiegla, 481 F.3d at 964-66.  His or her speech is not protected, and he or she has no claim for First Amendment retaliation.  Id.  This is because "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the exercise of employer control over what the employer itself has commissioned or created."  Morales v. Jones, 494 F.3d 590, 596 (7th Cir. 2007), *citing* Garcetti, 126 S.Ct. at 1960.  Thus, the question is whether Plaintiffs speech was made pursuant to their official duties as assistant state's attorneys.  *See also*, Morales v. Arthur Jones, 494 F.3d 590, 595 (7th Cir. 2007).

The Complaint alleges that prior to their termination, Plaintiffs "became aware that John T. Pepmeyer had engaged in conduct that may have constituted bias and a conflict of interest and possible official misconduct regarding his handling of prosecution files in the States Attorney's office." (Complaint at ¶¶ 35, 43, and 51)  Plaintiffs Stone and Kraycinovich allege that they opposed Pepmeyer's handling of files by speaking to the Illinois State Police and requesting the appointment of a special prosecutor. (Complaint at ¶¶ 36 and 44)  Plaintiff Jones alleges that she opposed Pepmeyer's handling of files by speaking to the Illinois State Police.  (Complaint at ¶ 52)

Based on the language in the Complaint, it is far from clear that speaking to the Illinois State Police and requesting the appointment of a special prosecutor regarding Pepmeyer's alleged mishandling of files would not be speech that "owes its existence to" their professional responsibilities or was made pursuant to their official duties as assistant state's attorneys.  Assistant state's attorneys in Illinois are charged with keeping informed as to violations of criminal law and investigating to determine whether an offense has been committed.  However, given the relatively brief and undetailed nature of the allegations, the Court agrees with the Magistrate Judge that further factual development of this claim is required before a definitive ruling can be made.[1]

---

[1] The same reasons make a ruling on qualified immunity premature.  Until the facts illuminating the contours and content of the alleged protected speech are before the Court on a more fully developed factual record, the Court cannot make a reasoned determination as to whether the speech was protected, let alone whether it was clearly established that their speech was or was not protected. Defendants argue that qualified immunity must be determined at the earliest possible stage of the litigation. While this is accurate as a general principle, the law does not require the Court to make a determination based on an inadequate factual record.

Accordingly, the requests to dismiss the First Amendment claims set forth in Counts V - VII are denied at this time.

The Court further notes that in their response to the Motions to Dismiss and to Defendants' objections to the Report & Recommendation, Plaintiffs assert that, contrary to the plain language of the Complaint, their speech was not limited solely to their concerns about Pepmeyer's mishandling of case files.  Rather, they maintain that their claims also include retaliation based on their verbal support of three other employees of the State's Attorney's office and contacts made to outside agencies to report the allegations of the ongoing sexual harassment of these employees.  Given this representation, the Court finds that Plaintiffs should replead Counts V - VII to specifically assert First Amendment claims based on their support of other employees and involvement in any investigation with respect to alleged sexual harassment and discrimination by Pepmeyer.

Defendants next object to the recommendation that the state law claims asserted in Counts VIII - XVI should not be dismissed for lack of jurisdiction based on the Illinois Court of Claims Act and absolute immunity.  The Magistrate Judge concluded that it was unnecessary to determine the jurisdictional reach of the Court of Claims because it was not dispositive of the question of sovereign immunity.  With respect to tort claims brought against Pepmeyer in his official capacity, the Magistrate Judge noted an agreement with Defendants that such claims would be barred.  However, the Complaint alleges these claims against Pepmeyer in his individual capacity.  The Magistrate Judge further recommended that Pepmeyer in his individual capacity should be dismissed from the state law wrongful discharge claims asserted in Counts VIII - X because he was not

the proper defendant under Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill.2d 12, 22 (1998), and this recommendation is also unchallenged.

Defendants' objection is directed to the state law claims for intentional infliction of emotional distress and libel/slander. The Magistrate Judge cited Magdziak v. Byrd, 96 F.3d 1045, 1048 (7th Cir. 1996), for the proposition that the Eleventh Amendment does not shield individual defendants from federal jurisdiction over state law tort claims. Defendants argue that the allegations involve only actions allegedly taken by Pepmeyer within the scope of his authority as State's Attorney and while performing his normal functions as State's Attorney. While these assertions may ultimately prove to be correct, the Court cannot reach this same conclusion on the undeveloped factual record now existing in this case.

Whether the action is truly against the state and only nominally against the employee is a fact-based inquiry that involves consideration of whether the defendant acted beyond the scope of his authority, breached a duty owed to the public generally, and acted with respect to matters not ordinarily within the normal and official functions as an employee of the State. Healy v. Vaupel, 133 Ill.2d 295 (1990). As the Court cannot find at this stage of the litigation that Plaintiffs could prove no set of facts that would establish that Pepmeyer acted in ways that would make the claims more than nominally against him as an individual or that the claims cannot be reasonably construed as anything other than claims against the State, Defendants' objection is overruled.

Finally, Defendants object to the recommendation that the state law claims asserted in Counts VIII - XVI are not barred by absolute immunity. In support of this

argument, Defendants cite Morton v. Hartigan, 145 Ill.App.3d 417, 422 (Ill.App. 1st Dist. 1986).  Absolute immunity is intended " to protect public officials from undue harassment by civil litigation for acts committed by law to their control or supervision, and within the scope of their duties and authority."  Id., *citing* Busk v. Harvin, 212 F.2d 143, 147 (5th Cir. 1954).  Again, the Court has found that the undeveloped record in this case is insufficient to promote a finding that it is beyond doubt that Plaintiffs could prove no set of facts indicating that Pepmeyer's actions were outside the scope of his duties and authority.  This question must also await resolution on a more fully developed factual record.

**CONCLUSION**

For the reasons set forth herein, the Court now ADOPTS the Report & Recommendation [#20] of the Magistrate Judge in its entirety.  Accordingly, the Motions to Dismiss [#12, #13, and #16] are GRANTED IN PART and DENIED IN PART.  Plaintiffs' Objection to the Report & Recommendation [#21] is DENIED.  Defendants' Objection to the Report & Recommendation [#23] is DENIED.  The Title VII claims asserted in Counts I - IV of the Complaint are DISMISSED.  If Plaintiffs wish to pursue claims based on retaliation for speech concerning sexual harassment and discrimination, they shall file an Amended Complaint to allege such claims as part of Counts V - VII within 14 days from the date of this Order.  The State of Illinois and Pepmeyer in his official capacity are DISMISSED as Defendants to Counts V - VII based on sovereign immunity under the Eleventh Amendment.  Pepmeyer in his individual capacity is DISMISSED from the state law retaliatory discharge claims asserted in Counts VIII - X, and the requests for punitive

damages for the intentional infliction of emotional distress claims asserted in Counts XI - XIII are also DISMISSED.

The remaining claims in this case as it proceeds into discovery are: Counts V - VII (First Amendment retaliation claims against Pepmeyer individually and Knox County), including any supplemental allegations to be included in an amended complaint as provided in this Order; Counts VIII - X (state claims for wrongful/retaliatory discharge against Knox County); Counts XI - XIII (state claims for intentional infliction of emotional distress against Pepmeyer individually and Knox County); and Counts XIV - XVI (state claims for libel and slander against Pepmeyer individually and Knox County). This matter is referred to Magistrate Judge Cudmore for further proceedings.

ENTERED this 28th day of March, 2008.


                                         s/ Michael M. Mihm
                                         Michael M. Mihm
                                         United States District Judge